Karin M. Gunter, Esquire
PA Id No. 79852
Law Office of Karin M. Gunter
7323 N. 21st Street
Philadelphia, PA 19138-2107                    ATTORNEY FOR PLAINTIFF,
(215) 548-9992                                  NATASHA DOCKERY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATASHA DOCKERY,<br>    Plaintiff<br><br>v.<br><br>AMERICAN CANCER SOCIETY, INC.<br> a/k/a AMERICAN CANCER SOCIETY,<br>EAST CENTRAL DIVISION, INC.<br>    Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**Preliminary Statement**

This action is brought by a former employee against her former employer for discrimination based on retaliation in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-1 *et seq.* ("Title VII"); and Pennsylvania Human Relations Act, *as amended*, 43 P.S. §§ 951-963 ("PHRA"); for violation of her rights under the Civil Rights Act of 1866, *as amended*, 42 U.S.C. §1981a ("Section 1981A") and for constructive discharge.

Plaintiff seeks compensatory and punitive damages, attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

**Jurisdiction and Venue**

1.  Original jurisdiction over Plaintiff's federal question claims is conferred upon this Court pursuant to 42 U.S.C. § 2000e-5(f)(1) and 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction over Plaintiff's state law claims is conferred upon this Court pursuant to 28 U.S.C. § 1367(a).

2.  Venue lies in this district by 28 U.S.C. § 1391(b) and (c) in that all actions

complained of occurred and Defendant resides in this district.

3. Plaintiff has exhausted her administrative remedies under Title VII and PHRA.

4. On or about May 14, 2012, Plaintiff dually filed an administrative complaint against Defendant Employer with United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging race, gender, retaliation and disability discrimination.

5. On May 23, 2013, Plaintiff received EEOC's Notice of Right to Sue letter.

A true and correct copy EEOC's Right to Sue Letter is attached as Exhibit "A".

6. On July 26, 2013, Plaintiff received her PHRC one year letter.

A true and correct copy of PHRC one year letter is attached as Exhibit "B".

**Parties**

7. Plaintiff NATASHA DOCKERY ("Plaintiff" or "Dockery") is an adult person and a citizen of the United States. Plaintiff resides in Sharon Hill, Pennsylvania. At all times relevant to this action, Plaintiff was employed by American Cancer Society, East Central Division, Inc. – Hope Lodge ("HOPE LODGE").

8. Defendant AMERICAN CANCER SOCIETY, EAST CENTRAL DIVISION, INC. ("Defendant" or "Employer") is a Pennsylvania non-profit corporation headquartered in Hershey, Pennsylvania with more than 500 employees at all times relevant to this action. One of its principal places of business is located at Hope Lodge, 110 West Laurel Avenue, Cheltenham, PA 19012.

**Factual Allegations**

9. Plaintiff is an adult female.

10. Defendant hired Ms. Dockery on or about March 24, 2011 as a Housekeeper at its Hope Lodge facility.

11. Her scheduled work time was 4 days a week for 4 – 5 hours per day.

12. The Hope Lodge facility provides free lodging for cancer patients who have to

travel more than 45 miles for cancer treatment.

13. As part of her duties as a Housekeeper, Plaintiff was responsible for services residents rooms, mopping, cleaning and driving the Lodge's van.

14. At all times relevant to this action, Byron Barksdale ("Barksdale") was Manager of Defendant's Hope Lodge facility and Plaintiff's supervisor.

15. At most times relevant to this action, Suzanne Rivera Gambino ("Rivera") was Assistant Manager of Defendant's Hope Lodge facility and Plaintiff's direct supervisor.

16. At all times relevant to this action, Michelle Ricks a/k/a Michelle Gilbert ("Gilbert") was Senior Director, Employee Relations & Development for the Employer. Her office was located in Harrisburg, PA.

17. At all times relevant to this action, Lora Heck ("Heck") was Director of the Hope Lodge facility and Barksdale's direct supervisor. Her office was located in Harrisburg, PA.

18. Approximately three weeks after the start of her employment with Hope Lodge, Plaintiff began experiencing harassing, pervasive and inappropriate behavior by Barksdale.

19. Specifically, Barksdale would:

    a. have sexually explicit conversations with in common dining areas in Plaintiff's presence;

    b. wander the floors at the facility, sneaking up behind Plaintiff while she was working in various rooms;

    c. initiate sexually explicit details about his personal life showing to Plaintiff inappropriate pictures of his ex-girlfriend in provocative poses and lingerie;

    d. call Plaintiff on her personal cellphone while she was off from work to talk about non-job related matters including, but not limited to, calling to see how and what she was doing and expressing to Plaintiff how he missed her;

    e. consistently try to get Plaintiff to break up with her boyfriend, calling the boyfriend "an abuser"; and

  f. make comments to Plaintiff about her body and how he liked "his women thick in the hips," *inter alia*.

20. On or about July 6, 2011, Plaintiff met with Rivera complaining of Barksdale's sexually harassing behavior towards her.

21. At that time, Plaintiff also told Rivera that Barksdale left her a voicemail message that "I miss you."

22. Plaintiff previously complained to Rivera of Barksdale's inappropriate sexual advances towards her including, but not limited to, showing Dockery pictures of a nude or partially nude female.

23. While meeting with Plaintiff, Rivera called Gilbert to make a verbal complaint of sexual harassment against Barksdale on behalf of Plaintiff.

24. Subsequently, Plaintiff and Rivera along with Heck and Gilbert were present for a teleconference, which occurred on July 11, 2011, to make a formal complaint against Barksdale and participate in an initial investigation.

25. During the July 11, 2011 teleconference, Gilbert and Heck interviewed Plaintiff concerning her complaint of sexual harassment by Barksdale.

26. During the July 11, 2011 teleconference, Rivera informed Gilbert and Heck she witnessed Barksdale's inappropriate behavior towards Plaintiff including, but not limited to, his making sexually charged references such as how he "likes chips, tits and hips."

27. On July 12, 2012, Plaintiff prepared and provided a written complaint against Barksdale to in support of her verbal interview statements.

28. Thereafter, on or about July 25, 2011, Plaintiff, Barksdale and Heck met one time to discuss the matter.

29. Rivera was not in attendance at the meeting, though Plaintiff questioned Heck why Rivera, her witness, was not present.

30. At that meeting, Heck told Plaintiff her complaint was not considered sexual

harassment but Heck would tell Barksdale to stay away from Plaintiff.

31. Upon information and belief, Defendant did not investigate complaint including, but not limited to, speaking to and/or interviewing any of the other workers or volunteers at Hope Lodge about the matter.

32. Two or three weeks after Plaintiff's meeting with Heck and Barksdale, Heck came to Hope Lodge and told Plaintiff that Rivera would no longer be at Hope Lodge.

33. Thus, Plaintiff had to go to Barksdale to get her work assignments.

34. On several occasions Plaintiff expressed to management (Heck) her feelings of being unsafe and fearful around Barksdale.

35. Before making her sexual harassment complaint, Barksdale told Plaintiff she would get the Weekend Coordinator position ant that the position would be available in June 2011.

36. In fact, Plaintiff received training from Rivera in anticipation of the Weekend Coordinator position.

37. In anticipation of getting the coordinator position, Plaintiff quit her part time job at another employer.

38. However, after making complaints against Barksdale, Plaintiff's work days and hours were cut to 1 or 2 days a week and 2 -3 hours per day.

39. Barksdale began giving Plaintiff's work responsibilities to other workers.

40. In addition, Barksdale's attitude towards and treatment of Plaintiff became hostile including, but not limited to, questioning Plaintiff's co-workers and Lodge volunteers about Plaintiff and Rivera. These volunteers and co-workers then began to ask Plaintiff what was going on.

41. In addition, after making complaints against him, Barksdale told Plaintiff she was not qualified for the Weekend Coordinator position.

42. Defendant did not considered or interviewed Plaintiff for the Weekend Coordinator position.

43. Due to Barksdale's conduct including, but not limited to, reduction in her work schedule days and times, failure to consider her for the Weekend Coordinator job and hostile work environment, Plaintiff was constructively discharged on August 24, 2011.

44. Other workers at the Hope Lodge facility also were sexually harassed by Barksdale and were forced to leave their employment because of the pervasive, severe and hostile work environment created by Barksdale.

## COUNT I
### Retaliation – Discrimination
### (Title VII, PHRA)

45. Plaintiff re-avers and incorporates by reference all averments in all paragraphs, *supra*.

46. Plaintiff opposed gender discrimination in the workplace at Hope Lodge.

47. Plaintiff engaged in protected activities when she challenged Barksdale's sexual harassment and misconduct towards her.

48. On July 8, 2011, Plaintiff engaged in protected activities when she followed company procedures by making an internal complaint of sexual harassment with Defendant's Assistant Manager, Senior Director, Employee Relations & Development against Barksdale.

49. On July 11, 2011, Plaintiff engaged in protected activity when she participated in the initial investigatory teleconference with Rivera, Gilbert and Heck.

50. On July 11, 2011, Plaintiff engaged in protected activity when she reported specific incidents of Barksdale's sexually harassing and inappropriate conduct at Hope Lodge to Gilbert and Heck, *inter alia*.

51. On July 12, 2011, Plaintiff engaged in protected activity when she provided a written report of Barksdale's sexually harassing behavior

52. Defendant took materially adverse actions against Plaintiff after and contemporaneously with her engaging in protected activities.

53. As a result of Plaintiff's engaging in protected activities, Defendant took materially

adverse actions taken against Plaintiff including, without limitation, failing to investigate her complaint, firing Rivera as Assistant Manager, requiring Plaintiff to report directly to Barksdale for work assignments; failing to consider her for the Weekend Coordinator position; and reducing her work days and times, *inter alia*.

54. Defendant Employer materially adverse actions against Plaintiff could dissuade a reasonable assistant manager from raising a complaint of employment discrimination.

55. As a result of Defendant's discriminatory conduct, Plaintiff suffered injury.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendant American Cancer Society, East Central Division, Inc. in the form of compensatory and punitive damages, attorney's fees, expert fees, costs and such other relief as this Court deems proper.

## COUNT II –
### Constructive Discharge – Hostile Work Environment
### (TITLE VII, PHRA)

56. Plaintiff re-avers and incorporates by reference all averments in all paragraphs, *supra*.

57. Plaintiff suffered intentional discrimination because of her gender.

58. The intentional gender discrimination at Defendant's Hope Lodge facility was pervasive and regular.

59. The intentional gender discrimination at Defendant's Hope Lodge facility detrimentally affected Plaintiff.

60. The intentional gender discrimination at Hope Lodge would have detrimentally affected a reasonable person of the same protected class in Plaintiff's position.

61. Defendant Employer is vicariously liable via respondeat superior for the actions of Barksdale as Manager of the Hope Lodge facility.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendant American Cancer Society, East Central Division, Inc. in the form of

compensatory and punitive damages, attorney's fees, expert fees, costs and such other relief as this Court deems proper.

**Respectfully submitted:**

**LAW OFFICE OF KARIN M. GUNTER**

_____
Karin M. Gunter, Esquire
